IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:09-CR-33-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOSHUA HUNT, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motions for compassionate release (DE 278) and for reduction of sentence pursuant to § 404 of the First Step Act of 2018 (DE 299, 347). The motions were briefed fully and in this posture the issues raised are ripe for ruling. For the following reasons, the motions are denied.

## BACKGROUND

On August 3, 2009, defendant pleaded guilty, with a written plea agreement, to two counts of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (counts 2 and 7); two counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (counts 10 and 12); carjacking, in violation of 18 U.S.C. § 2119 (count 5); and possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (count 15). The offense conduct may be summarized as follows. Between February 1, 2008, and June 25, 2008, defendant, together with co-defendants Joshua Goodman, Luther Locklear, and Timothy Locklear, committed a series of armed robberies and carjackings. On February 1, 2008, defendant and Luther Locklear, while armed with a handgun and pipe, respectively, forced their way into a private residence, pointed a firearm at one of the residents, and demanded money and

drugs. When the victim responded that no drugs were in the home, defendant stated he would kill her if he recovered any drugs in the residence. Defendant also threatened another victim in the residence. Ultimately, defendant and Luther Locklear stole $700 and a cellular phone.

On June 18, 2008, defendant and Joshua Goodman approached a victim and asked for a ride to defendant's residence in Maxton, North Carolina. The victim agreed, and a second victim then entered the car while defendant and Goodman got in the backseat. As they proceeded to defendant's residence, Goodman brandished an AK-47 assault rifle and stated, "you know what time it is, get out of the vehicle." (PSR (DE 86) ¶ 23). The victims complied, and defendant and Goodman proceeded to steal the vehicle. Law enforcement subsequently recovered the stolen vehicle.

On June 21, 2008, defendant, Goodman, and Timothy Locklear drove to a tobacco shop in Rowland, North Carolina. Defendant, who was armed with a handgun and wearing a shirt over his face, entered the store and announced, "this is a robbery." (Id. ¶ 24). Defendant then pointed the firearm at the store clerk and demanded money. The clerk complied by handing over $250, two cartons of cigarettes, and several cigars. The defendants then fled the scene in their vehicle.

On June 24, 2008, defendant and Goodman left a residence after purchasing cocaine base, and encountered a vehicle occupied by two victims. Defendant asked for a ride to his residence in Maxton, and promised the victims money and an unspecified amount of crack cocaine in exchange. The victims agreed and defendant and Goodman entered the backseat of the vehicle. As the four of them were en route to Maxton, defendant suddenly threatened to kill one of the victims, took out his firearm, and then randomly fired four shots, striking one of the victims once in his elbow. The victims stopped the vehicle and jumped out. Defendant and Goodman then

2

climbed into the front of the car and fled the scene. The victim survived, and law enforcement later recovered the vehicle, although defendant and Goodman stole the victim's firearm that was located under the driver's seat.

On June 25, 2008, defendant, Goodman, and Timothy Locklear agreed to rob a known drug dealer in Maxton. They drove to the dealer's residence using the same vehicle stolen during the June 24 carjacking. Defendant, armed with a 9mm firearm and wearing a mask, and Timothy Locklear, armed with an AK-47 assault rifle, forced their way into the residence. Three victims were present in the residence during the invasion. Once inside, defendant and Timothy Locklear fired their weapons at two of the victims multiple times, although neither of the victims were hit. Defendant then used his firearm to strike one of the victims on the back of the head, and another victim in the face. Defendant and Timothy Locklear next ordered the victims to lie on the floor, while defendant searched them for money and drugs. Thereafter, defendant held the victims at gunpoint and forced them to walk from room to room while they searched for drugs and other valuables. Ultimately, defendant and Timothy Locklear stole two firearms, approximately 1.5 ounces of cocaine base, $900, several cellular telephones, an unspecified quantity of marijuana, and a ring. They ordered the victims to lie on the floor as they left the residence.

The following day, law enforcement located a vehicle occupied by defendant, Goodman, and Timothy Locklear. The driver, Timothy Locklear, sped away when officers attempted a traffic stop, resulting a high-speed chase. The defendants eventually stopped or crashed the vehicle and fled on foot. Defendant and Goodman were apprehended after a brief foot chase. Law enforcement recovered a handgun, two AK-47 assault rifles, and 14.6 grams of cocaine base in the immediate vicinity. Timothy Locklear was not located at the time, but he was arrested

3

several weeks later.

Following guilty plea to the charges summarized above, the court held defendant's sentencing hearing on November 10, 2009. Defendant was sentenced to aggregate custodial term of 630 months' imprisonment, comprised of 210 months on counts 2, 7, and 15, to be served concurrently; 180 months on count 5, concurrent with the sentence on counts 2, 7, at 15; consecutive term of 120 months on count 10, and another consecutive term of 300 months on count 12. As relevant to the instant motions, the "stacked" consecutive sentences in counts 10 and 12 were imposed under 18 U.S.C. § 924(c)(1)(C), which at the time required mandatory consecutive sentence of 25 years' imprisonment for second or successive § 924(c) convictions even if the second conviction was obtained in the same criminal proceeding. See Deal v. United States, 508 U.S. 129, 132 (1993) (describing penalties before the First Step Act of 2018).

By the instant motions, defendant requests that the court reduce his sentence pursuant to two separate provisions of the First Step Act. First, defendant moves for compassionate release, arguing that disparity between his stacked § 924(c) sentences and the likely sentence for counts 10 and 12 under current law presents extraordinary and compelling reasons for a sentence reduction. In support, defendant relies on character letters from his family members, and Federal Bureau of Prisons ("FBOP") records documenting his conduct in custody. The motion was briefed fully.

Second, defendant moves for sentence reduction pursuant to § 404 of the First Step Act based on that provision's retroactive changes to the statutory penalties for count 15. Although § 404 of the First Step Act is targeted to offenses involving cocaine base, defendant argues that the court also may reduce his sentence on the remaining counts under the sentencing package doctrine. In support, defendant relies on supportive letters from his family, FBOP records

4

pertaining to defendant's conduct in custody, and state court records from his prior convictions. This motion was briefed fully. In addition, the court directed the parties to file supplemental briefing addressing <u>Concepcion v. United States</u>, 597 U.S. 481 (2022), which was decided while defendant's motions were pending, together with related case law from the United States Court of Appeals for the Fourth Circuit, and to update the court regarding defendant's conduct in custody. The parties timely submitted these supplemental briefs.

**COURT'S DISCUSSION**

A.    Standard of Review

Section 404 of the First Step Act allows defendants sentenced before enactment of the Fair Sentencing Act to move for sentence reduction based on the revised statutory penalties associated with cocaine base. <u>See</u> First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. The Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for [cocaine base] trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." <u>Dorsey v. United States</u>, 567 U.S. 260, 269 (2012) (citing Fair Sentencing Act of 2010, § 2(a), Pub. L. No. 111-220, 124 Stat. 2372). Section 404 provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). The term "covered offense" means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." <u>Id.</u> § 404(a).

The court has discretion to deny relief under the Act even if the defendant meets the

5

eligibility criteria.   Id. § 404(c); Concepcion, 597 U.S. at 496 (noting "§ 404(c) only underscores that a district court is not required to modify a sentence").   Finally, sentence reductions are not permitted if the defendant's sentence previously was imposed or reduced in accordance with the Fair Sentencing Act, or if the defendant previously moved for relief under the First Step Act and the court denied the motion on the merits.   First Step Act § 404(c).

If a defendant is eligible for sentence reduction pursuant to § 404, the court should first recalculate the Guidelines range only to account for the Fair Sentencing Act's changes to the statutory penalties and related amendments under the United States Sentencing Guidelines, and then determine the appropriate sentence using the relevant factors under 18 U.S.C. § 3553(a).   See Concepcion, 597 U.S. at 498 n.6, 500–02 (2022); United States v. Smith, 75 F.4th 459, 465 (4th Cir. 2023).   The Fourth Circuit has summarized the procedure for § 404 motions as follows: "First, [district courts] must recalculate the movant's Guidelines range only to the extent it adjusts for the Fair Sentencing Act.   Second, they may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence."   United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023).

With respect to step two, the district court "may . . . consider postsentencing conduct or nonretroactive changes [to the guidelines range] in selecting or rejecting an appropriate sentence, with the properly calculated guidelines range as the benchmark."   Id. at 183–84.   In conducting this analysis, the court "must consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the [18 U.S.C. § 3553(a)] factors, determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those factors, and adequately explain that decision."   Id. at 185; see also Concepcion, 597 U.S. at 500–02.

Moreover, the First Step Act is a "strong remedial statute, meant to rectify disproportionate and racially disparate sentencing penalties" and thus the court should weigh the "remedial aims of the First Step Act" when considering a sentence reduction. United States v. Swain, 49 F.4th 398, 403 (4th Cir. 2022).[1]  Nonetheless, the district court's "discretion is broad and its burden light" when resolving a First Step Act motion, and all that is required is a "brief statement of reasons." Troy, 64 F.4th at 184; Concepcion, 597 U.S. at 501.

Turning to the standard governing motions for compassionate release, the court generally may not modify a sentence once it has been imposed. 18 U.S.C. § 3582(c).  One exception to that rule is the doctrine of compassionate release, which permits sentence reductions in extraordinary and compelling circumstances.  As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now permits a defendant to file motion for compassionate release in the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

The court may reduce a defendant's term of imprisonment if it finds "extraordinary and compelling reasons" warrant a sentence reduction, the reduction "is consistent with applicable policy statements issued by the Sentencing Commission," and that the factors in 18 U.S.C. § 3553(a) "merit a reduction."  18 U.S.C. § 3582(c)(1)(A); United States v. McCoy, 981 F.3d 271, 275–76 (4th Cir. 2020); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021).  As relevant here, the Sentencing Commission's current policy statement, U.S.S.G. § 1B1.13, provides that

---

[1]  In this order, all internal citations and quotations are omitted from citations, unless otherwise specified.

extraordinary and compelling reasons for compassionate release exist:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. 1B1.13(b)(6).   The extraordinary and compelling reasons inquiry is "multifaceted" and must "account for the totality of the relevant circumstances."   United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023).

Finally, the court has "broad discretion" to deny a motion for compassionate release if it determines the § 3553(a) factors do not support a sentence reduction, even if the defendant establishes extraordinary and compelling reasons for release.   See Kibble, 992 F.3d at 330–32; see also United States v. Bethea, 54 F.4th 826, 834 (4th Cir. 2022).   Section 3553(a) requires that the court consider the following factors when imposing a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).   In the context of compassionate release motions, the court should "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances

present" in the case.   Kibble, 992 F.3d at 332.   Moreover, defendant "bears the burden of showing why the § 3553(a) factors justify a modified sentence."   United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024).

B.      Analysis

1.      First Step Act § 404 motion

Beginning with the § 404 motion, count 15 is a covered offense where the statutory penalties for possession with intent to distribute more than five grams of cocaine base were modified by section two of the Fair Sentencing Act.   See First Step Act § 404(a); Terry v. United States, 593 U.S. 486, 492–94 (2021).   In particular, defendant was subject to statutory range of 5 to 40 years' imprisonment for count 15 at the time of sentencing, whereas the new range under the Fair Sentencing Act is zero to 20 years for five grams of cocaine base.   Dorsey, 567 U.S. at 269; United States v. Wirsing, 943 F.3d 175, 180–81 (4th Cir. 2019); see 21 U.S.C. § 841(b)(1)(C). The court also assumes without deciding that it has discretion to reduce defendant's sentence on the remaining counts under the "sentencing package" doctrine in the instant § 404 proceeding. See United States v. Richardson, 96 F.4th 659, 665 (4th Cir. 2024).[2]

Turning to the guidelines range, the court must recalculate that range accounting for the Fair Sentencing Act's changes to the statutory penalties and any related guidelines amendments. Smith, 75 F.4th at 465.   Here, in the original PSR, defendant's non-§ 924(c) offenses were assigned multi-count adjustments under U.S.S.G. § 3D1.4, as follows:

---

[2]      Neither party addresses whether the drug conviction "function[s] as a package" with the remaining charges. See Richardson, 96 F.4th at 665.   In light of the decision herein to maintain the sentence, the court assumes without deciding that the sentencing package doctrine applies.

| Offense | Count | Adjusted offense level | Units |
|---------|-------|------------------------|-------|
| Hobbs Act robbery | 2 | 31 | 1 |
| Carjacking | 5 | 27 | 1 |
| Hobbs Act robbery | 7 | 26 | ½ |
| Possession with intent to distribute more than 5 grams of cocaine base | 15 | 30 | 1 |

(PSR (DE 86) ¶¶ 94–98).   The greater adjusted offense level was 31, the offense level for count two.   See U.S.S.G. § 3D1.4; (PSR (DE 86) ¶ 99).   The court also added four levels to reach the combined adjusted offense level of 35 because the total units were between 3 ½ and 5.   See U.S.S.G. § 3D1.4; (PSR (DE 86) ¶¶ 100, 101).   When adjusting for acceptance of responsibility, the total offense level was 32, and the criminal history category was VI, producing a guidelines range of 210 to 262 months' imprisonment for counts 2, 5, 7, and 15.   (PSR (DE 86) ¶ 111). When adding the two consecutive mandatory minimum sentences for the § 924(c) convictions in counts 10 and 12, which were 120 and 300 months, respectively, the original guidelines range was 630 to 682 months' imprisonment.   (PSR (DE 86) ¶ 111); see also U.S.S.G. § 4B1.1(c)(2).

The Fair Sentencing Act and related guidelines amendments do not change the adjusted offense levels for counts 2, 5, or 7 where those counts do not involve distribution of cocaine base. (See Def's Suppl. Br. (DE 347) at 9 (acknowledging the "multicount adjustments for counts 2, 5, and 7 remain unchanged")).   For count 15, the new base offense level under the Fair Sentencing Act's guidelines amendments is 26.   See U.S.S.G. § 2D1.1(c)(7) (Nov. 2011) (providing base offense level of 26 for 47 grams of cocaine base).   This offense level is derived from the drug quantity table in the 2011 version of the guidelines manual, which incorporates Amendment 750, the Fair Sentencing Act amendment to the guidelines.   See U.S.S.G. app. C, amend. 750.

10

Although defendant argues that the base offense level should be 24, that appears to be based on the drug quantity table in the 2018 manual. The court cannot use the 2018 manual because it incorporates additional amendments to the drug quantity table that are unrelated to the Fair Sentencing Act. See Smith, 75 F.4th at 465 & n.2.

Defendant further argues the court should remove a weapons enhancement when recalculating the range for count 15. At the original sentencing, the court added two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during a drug trafficking offense. (PSR (DE 86) ¶ 89). Defendant argues this enhancement should be removed when recalculating the adjusted offense level for count 15 because it was applied in error under U.S.S.G. § 2K2.4 cmt. n.4. (Def's Suppl. Br. (DE 347) at 9). But the court cannot modify the guidelines in any way except to account for the changes under the Fair Sentencing Act. See Concepcion, 597 U.S. at 498 n.6 ("A district court cannot, however, recalculate a [§ 404] movant's benchmark Guidelines range in any way other than to reflect retroactive application of the Fair Sentencing Act."). Neither the Fair Sentencing Act nor the related guidelines amendments alter the dangerous weapon enhancement under U.S.S.G. § 2D1.1(b). See Smith, 75 F.4th at 465 & n.2.

Thus, the adjusted offense level for count 15 under the Fair Sentencing Act is 28, derived by adding the base offense level of 26 and the two-level enhancement under U.S.S.G. § 2D1.1(b)(1). (See PSR (DE 86) ¶¶ 88–93); U.S.S.G. § 3D1.3(a). The revised chart showing the multi-count adjustments under U.S.S.G. § 3D1.4, accounting for the Fair Sentencing Act and related guidelines amendments, is set forth below:

11

| Offense | Count | Adjusted offense level | Units |
|---|---|---|---|
| Hobbs Act robbery | 2 | 31 | 1 |
| Carjacking | 5 | 27 | 1 |
| Hobbs Act robbery | 7 | 26 | ½ |
| Possession with intent to distribute more than 5 grams of cocaine base | 15 | 28 | 1 |

The greater adjusted offense level remains 31, the offense level for count two, which is the same level assigned at the original sentencing. U.S.S.G. § 3D1.4; (PSR (DE 86) ¶ 99). And the combined adjusted offense level therefore is still 35 where the total units are between 3 ½ and 5.[3] See U.S.S.G. § 3D1.4. When adjusting for acceptance of responsibility, the total offense level is 32. (PSR (DE 86) ¶ 103). Combined with criminal history category VI, the guidelines range is 210 to 262 months' imprisonment for counts 2, 5, 7, and 15, the same range applied at the original sentencing. See U.S.S.G. ch. 5, pt. A (sentencing table). And the total guidelines range accounting for the § 924(c) convictions remains 630 to 682 months' imprisonment. (PSR (DE 86) ¶ 111); see also U.S.S.G. § 4B1.1(c)(2).

As a result, the Fair Sentencing Act and related guidelines amendments do not alter the guidelines range applied at defendant's original sentencing. The range of 630 to 682 months' imprisonment is the benchmark guidelines calculation that serves as the "anchor" for determining whether and to what extent defendant's sentence should be reduced in the § 404 proceeding. See Concepcion, 597 U.S. at 498 n.6; Troy, 64 F.4th at 184.

---

[3] Notably, the career offender provision provides that the offense level in U.S.S.G. § 4B1.1(b) shall apply if it is greater than the otherwise applicable level. See id. The offense level in U.S.S.G. § 4B1.1(b) is based on the statutory maximum term of imprisonment. Id. As noted above, the Fair Sentencing Act modified defendant's statutory maximum punishment in count 15 by reducing it to 20 years' imprisonment. Wirsing, 943 F.3d at 180–81. The corresponding offense level in § 4B1.1(b) is 32 when the statutory maximum punishment is 20 years. The court therefore must use the otherwise applicable offense level derived from U.S.S.G. § 3D1.4. See U.S.S.G. § 4B1.1(b).

The foregoing analysis is not the end of the complicated guidelines issues that must be resolved in this case. As noted above, at the second step of the § 404 analysis, the court must consider defendant's arguments for a sentence below the guidelines range, which may include changes in law unrelated to the Fair Sentencing Act. See Concepcion, 597 U.S. at 498 n.6; Troy, 64 F.4th at 184 (describing second step as requiring district court to "consider other legal and factual changes when deciding whether to impose a reduced sentence" when such changes are raised by the parties).

Defendant correctly notes that a host of guidelines and statutory changes would produce a lower range if he were resentenced today. The most significant change is to the statutory penalties for counts 10 and 12. At the original sentencing, the second § 924(c) conviction in count 12 required a consecutive term of 300 months' imprisonment. See 18 U.S.C. § 924(c)(1)(C) (2006); Deal, 508 U.S. at 132. In the First Step Act, Congress amended § 924(c) such that the consecutive term of 300 months' imprisonment applies only if the first conviction has become final. First Step Act § 403(a), 132 Stat. at 5221–22. Thus, "under the [amended version of § 924(c)], if an individual is convicted of two § 924(c) offenses in the same proceeding . . . the mandatory minimum sentence for the second offense drops from 300 months to [120 months if the firearm was discharged]." United States v. Jordan, 952 F.3d 160, 165 (4th Cir. 2020) (citing First Step Act § 403(a), 132 Stat. at 5221–22).

Here, where defendant's second § 924(c) conviction in count 12 was imposed within the same criminal judgment as the first, the statutory minimum sentence for count 12 under current law is 120 months' imprisonment. See 18 U.S.C. § 924(c)(1)(C); Jordan, 952 F.3d at 165.[4] The

---

[4] Notably, this provision only applies "if a sentence for the offense has not been imposed" as of the date of enactment of the First Step Act, and thus Congress did not provide a mechanism for the court to reduce all § 924(c)

mandatory minimum for count 10 would remain 120 months, producing a total consecutive term of 240 months' imprisonment in counts 10 and 12 under current law. Of course, that term is substantially below the aggregate consecutive term of 420 months applicable at the original sentencing.

Moreover, defendant no longer qualifies for the career offender enhancement under U.S.S.G. § 4B1.1. See United States v. Simmons, 649 F.3d 237, 247 (4th Cir. 2011) (en banc); (Def's Mot. (DE 299) at 4–5 (detailing how the state convictions used to establish the career offender enhancement were not punishable by more than one year imprisonment); (PSR Modification (DE 305) (noting defendant no longer qualifies for the enhancement)).[5] Although removing the career offender designation does not change the offense level for the reasons set forth above, it does reduce defendant's criminal history category from VI to IV. See U.S.S.G. § 4B1.1(b); (PSR (DE 86) ¶ 44).[6]

Additional changes in law also affect the applicable guidelines range under current law. Pursuant to Amendment 782 to the Guidelines, the base offense level for count 15 is further

---

sentences imposed under the prior regime. See McCoy, 981 F.3d at 275; First Step Act § 403(b). In addition, defendant does not argue for a lower statutory maximum sentence based on the fact that the discharge element was not charged in the indictment. See Alleyne v. United States, 570 U.S. 99, 103 (2013); see also United States v. Cotton, 535 U.S. 625, 631–34 (2002) (holding similar error is subject to forfeiture). In this context, the court observes defendant pleaded guilty to discharging the firearm during the underlying offenses for counts 10 and 12. (Arraignment Tr. (DE 120) at 25–26). And he was informed of the enhanced mandatory minimum punishment in the plea agreement. (DE 73 at 7).

[5]     The government does not contest defendant's showing that he no longer qualifies for the career offender enhancement. In fact, the government provides no response to defendant's arguments regarding the applicable guidelines range for the § 404 proceeding or the range that would be applicable today notwithstanding extensive briefing of these issues by defendant's counsel. (See Gov. Suppl. Br. (DE 349); Gov. Resp. (DE 302)).

[6]     Defendant also notes that the criminal history score would be reduced to seven due to guidelines amendments removing the enhancement for committing the offenses within two years of his release from custody. (Def's Mot. (DE 299) at 7 n.7). Although the court has considered this fact as it pertains to the request for a downward variance, the removal of these two points does not change the criminal history category, which remains IV. See U.S.S.G. ch. 5, pt. A (sentencing table); (Def's Mot. (DE 299) at 7 n.7).

reduced to level 24.   See U.S.S.G. § 2D1.1(c)(8) (Nov. 2023); U.S.S.G. app. C, amend. 782; (Def's Mot. (DE 299) at 7).   As noted above, defendant also argues the court erroneously applied two-level enhancement for possession a weapon under U.S.S.G. § 2D1.1(b)(1), (see PSR (DE 86) ¶ 89), where defendant was convicted of a § 924(c) offense, and the commentary to U.S.S.G. § 2K2.4 precludes guidelines weapons enhancements "when determining the sentence for the underlying offense" that is the predicate for the § 924(c) conviction.   U.S.S.G. § 2K2.4 cmt. n.4. Defendant, however, was not sentenced for any of the underlying offenses forming the predicates for his § 924(c) convictions,[7] which would appear to exclude operation of this application note. See id.   In any event, defendant acknowledges that the revised guidelines range under current law is not affected by removal of the weapons enhancement under § 2D1.1(b)(1).   (Def's Mot. (DE 299) at 7 n.6); see also U.S.S.G. § 3D1.4.[8]   Accordingly, under current law, the revised base offense level for count 15 is 26.

Turning to the multi-count adjustment under U.S.S.G. § 3D1.4, the revised table reflecting the foregoing changes is set forth below:

| Offense | Count | Adjusted offense level | Units |
|---|---|---|---|
| Hobbs Act robbery | 2 | 31 | 1 |
| Carjacking | 5 | 27 | 1 |
| Hobbs Act robbery | 7 | 26 | ½ |
| Possession with intent to distribute more than 5 grams of cocaine base | 15 | 26 | ½ |

---

[7]     The predicate offenses for counts 10 and 12 were counts 9 and 11, respectively, and defendant did not plead guilty to these offenses.   (See Judgment (DE 103)).

[8]     This is because even if the court removes the two-level enhancement the resulting adjusted offense level for count 15 is 24, and that offense level corresponds to ½ unit under U.S.S.G. § 3D1.4(b).   Offense level 26 also produces ½ unit.   See id.

15

This produces a combined adjusted offense of 34, where the total number of units requires adding three levels to the highest adjusted offense level of 31. See U.S.S.G. § 3D1.4. Subtracting three levels for acceptance of responsibility produces total offense level 31, which when combined with criminal history category IV establishes a guidelines range of 151 to 188 months on counts 2, 5, 7, and 15. U.S.S.G. ch. 5, pt. A (sentencing table). Pursuant to U.S.S.G. § 2K2.4, the guidelines range for the remaining § 924(c) counts is the minimum term required by statute, which is 240 months under current law. See 18 U.S.C. § 924(c)(1)(A)(iii); Jordan, 952 F.3d at 165. The aggregate guidelines range therefore is 391 to 428 months' imprisonment, far below the range applicable at the original sentencing and under the Fair Sentencing Act, 630 to 682 months' imprisonment, and the actual sentence of 630 months.

Based on the foregoing, defendant argues that he is serving an "egregiously harsh" sentence compared to what Congress and the guidelines now deem appropriate for his offense conduct and criminal history. (Def's Mot. (DE 299) at 8). The court cannot agree. Defendant's argument fails to account for the offense conduct and the conduct underlying the dismissed counts, which include profoundly violent and reckless behavior. For example, defendant not only carjacked the two victims on June 24, 2008, he also discharged his firearm four times as they were riding in the vehicle, striking one victim in the elbow. (PSR (DE 86) ¶ 25). Defendant also discharged the firearm in the direction of two victims during the June 25 robbery, though they were not hit, and struck two victims with the firearm. (Id. ¶ 27). Although defendant did not discharge the firearm during the other robberies and carjacking, those events also involved extremely violent conduct as set forth above.

It is true defendant did not plead guilty to all of the offenses alleged in the indictment. The

16

presentence investigation report, however, makes clear that defendant was an active participant in each of the five robberies/carjackings, and the counts he pleaded to are all connected to various aspects of the five incidents. (PSR (DE 86) ¶¶ 1–31). And by pleading guilty to the two § 924(c) convictions and the remaining counts, defendant avoided conviction and sentencing for three additional § 924(c) counts charged in the indictment, together with other charges. (See Indictment (DE 1)). If defendant had been convicted of the three additional § 924(c) charges, the required consecutive punishment would have been over 100 years' imprisonment (under the prior § 924(c) penalties), effectively a life sentence. Defendant avoided this sentence by entering into the operative plea agreement that provides for potential release when he is in his sixties. By the instant motion, defendant requests that the court disregard the dismissed counts and the benefits that he received from the plea agreement, and resentence him as if the counts to which he pleaded guilty (and the favorable changes in sentencing law applicable thereto) are the only relevant facts of this case.

Defendant received the exact sentence bargained for in the plea agreement. See United States v. Bond, 56 F.4th 381, 384–85 (4th Cir. 2023) (holding that the district court may consider the impact of plea agreement when determining whether § 3553(a) factors support sentence reduction in related context of compassionate release). Nonetheless, he now requests overall sentence reduction of approximately 20 years based on changes in sentencing law that occurred well after the parties negotiated this agreement. In light of the conduct underlying the offenses of convictions and the dismissed counts, such a reduction would not reflect the seriousness of the offenses, account for defendant's violent criminal history, promote respect for the law, or provide just punishment in this case. See 18 U.S.C. § 3553(a)(2)(A); Bond, 56 F.4th at 384.

17

Defendant raises numerous additional arguments for a downward variance, but none of them persuade. The fact that the Supreme Court decided <u>Dean v. United States</u>, 581 U.S. 62 (2017) after sentencing in this case does not change the court's analysis of the instant motions. <u>Dean</u> permits district courts to consider the severity of mandatory consecutive terms for § 924(c) convictions when imposing sentence on the underlying predicate convictions. 581 U.S. at 69. Here, the court has reconsidered defendant's sentence on counts 2, 5, 7, and 15 in light of the mandatory consecutive sentences for the § 924(c) convictions and defendant's various arguments for a sentence reduction, but the severity of those latter sentences do not justify reducing the combined sentence for the remaining counts for the reasons explained herein.

Next, defendant emphasizes his rehabilitative efforts in custody. But that argument is undermined to a considerable degree by his actual conduct in custody. Since sentencing in this case, defendant effectively continued his violent criminal conduct in the FBOP. His extensive disciplinary record includes infractions for assault without serious injury, making a sexual proposal to staff, possessing unauthorized items, possessing dangerous weapons, use of alcohol/drugs, attempting to assault another inmate with a combination lock, fighting with another person, headbutting a staff member, striking a staff member, and related conduct. (Disciplinary Record (DE 349-1)). While it is true that defendant has incurred only one infraction since 2017, his overall record indicates he continues to engage in criminal conduct.

The court recognizes defendant has participated in significant rehabilitative programs, including a "modified therapeutic community" known as the challenge program, maintained consistent employment while learning important vocational skills, and made progress toward his GED. (Def's Mot. (DE 299) at 10–12, 14; Def's Suppl. Br. (DE 347) at 10). In addition,

18

defendant notes that he stopped using alcohol and drugs in 2015, and he has remained sober since. (See Def's Suppl. Br. (DE 347) at 10–11).   As a result of his rehabilitative efforts and improved disciplinary record, defendant's general risk of recidivism has been reduced from high to medium, though the risk of committing future violent conduct remains high.   (Id. at 11; Pattern Assessment (DE 347-2) at 17).

While the court commends defendant for his more recent behavior in custody, and strongly encourages him to continue his rehabilitative efforts, these factors do not warrant a sentence reduction at this time.   The offense conduct, criminal history, and serious disciplinary infractions, together with the related issues regarding the plea agreement, all support maintaining the current sentence notwithstanding the commendable efforts at rehabilitation.

Defendant also identifies his difficult upbringing, lack of a father figure or supportive peers, and the fact that he was only 19 years old at the time of the offense conduct as factors supporting a downward variance.   Relatedly, defendant notes that the Supreme Court has recognized that adolescents "should be distinguished from adults" based on their "immaturity and 'underdeveloped sense of responsibility' [that leads to] recklessness, impulsivity, and heedless risk taking" along with being more vulnerable to peer pressure and other influences.   (Id. at 9 (quoting Miller v. Alabama, 567 U.S. 460, 471 (2012)).   Defendant argues the court should consider that his "age and juvenile characteristics played a role in his offense" and that these factors support reducing defendant's sentence.   In addition, defendant notes that even if the court imposes a sentence at the low end of the range applicable today, 391 months' imprisonment, he would be almost 50 years old when released, an age range associated with significantly reduced rates of recidivism.   (Id. at 13–14).

While the court has considered these factors, they do not justify a sentence reduction given the egregious offense conduct and criminal history. Defendant also held a leadership role in the offense conduct, and there is no evidence suggesting his behavior was the product of undue pressure from older individuals or peers. Moreover, as noted above, the disciplinary record indicates defendant has not matured out of criminal conduct. (See DE 349-1).

In sum, having fully considered defendant's arguments, together with the full record of this case in light of the § 3553(a) factors and the remedial purpose of § 404 of the First Step Act, the court finds the current sentence remains necessary to reflect the seriousness of the offense conduct, provide just punishment and promote respect for the law, protect the public from further crimes of defendant, provide specific and general deterrence, and to account for the significant benefits conferred on both parties by the plea agreement.

2.     Motion for compassionate release

Defendant also moves for compassionate release premised on his consecutive § 924(c) sentences in counts 10 and 12. As discussed above, defendant was sentenced to 420 months' imprisonment on the basis of these two convictions, comprising significant majority of his aggregate sentence of 630 months. The First Step Act, however, amended § 924(c) such that the mandatory minimum sentence has been reduced from 420 months to 240 months. See First Step Act § 403(a), 132 Stat. at 5221–22; Jordan, 952 F.3d 160, 165; see also 18 U.S.C. § 924(c). This sentencing disparity between defendant's actual sentence and the likely sentence under current law is an extraordinary and compelling reason for compassionate release. See U.S.S.G. 1B1.13(b)(6); see also McCoy, 981 F.3d at 286 (concluding similar sentence disparity constitutes extraordinary and compelling circumstances for compassionate release prior to the current version of § 1B1.13).

20

Defendant, however, still must show that the § 3553(a) factors support a sentence reduction in light of the extraordinary and compelling reasons for release. See Kibble, 992 F.3d at 330–32. And the court finds he cannot make this showing essentially for the same reasons set forth above in connection with the § 404 motion. Therein, the court considered defendant's revised guidelines range in light of the changes to the § 924(c) penalties and other changes to the range under current law, and further accounted for his post-sentencing conduct, history and characteristics, the pertinent § 3553(a) factors, and his extensive arguments for a sentence reduction, but declined to reduce the sentence. That same analysis governs the request for compassionate release, and compels denial of the motion under the § 3553(a) factors, notwithstanding defendant's stacked § 924(c) sentence in count 12, acceptance of responsibility, his efforts at rehabilitation, and the remaining arguments in the motion for compassionate release. (See DE 297). In other words, even reconsidering the § 3553(a) factors in light of the extraordinary and compelling reasons for compassionate release, the current sentence remains necessary to accomplish the goals of sentencing and account for the offense conduct and defendant's history and characteristics.

## CONCLUSION

Based on the foregoing, defendant's motions for sentence reduction pursuant to § 404 of the First Step Act (DE 299, 347) and for compassionate release (DE 278) are DENIED. In addition, defendant's request to reduce the fine is DENIED.

SO ORDERED, this the 23rd day of May, 2024.

_Louise V. Flanagan_
LOUISE W. FLANAGAN
United States District Judge

21